MONROE, C. J.
Defendant, having been convicted of abduction and sentenced to imprisonment at hard labor, presents his case to this court by'means of three bills of exception, to wit, a bill to the overruling of his objection to the admission of certain testimony concerning happenings between him and the prosecutrix in the state of Texas, a bill to the overruling of a motion for new trial, and a bill to the overruling of a motion 'in arrest of judgment.
[1] 1. The indictment charges that defendant — ■
“did unlawfully, willfully, fraudulently, and by false representations, entice, abduct, induce from her mother’s house one [giving the name], a young girl of previous chaste character, for the purpose of unlawful sexual intercourse, at a house or place in the city of Beaumont, state of Texas, and did then and there unlawfully, willfully, and feloniously, and by false representations, have unlawful sexual intercourse with the aforesaid-.”
The statute under which the prosecution is conducted reads, in part (quoting from section 1):
“That any person who shall fraudulently, deceitfully or by any false representation, entice, abduct, induce, decoy, hire, engage, employ or take' any woman of previous chaste character from her father’s house, or from any other place where she may be, for the purpose of prostitution, or for any unlawful sexual intercourse, at a house of ill fame, or at any other place of like character, or elsewhere, * * * shall, on conviction, be punished,” etc.
The testimony to which the bill refers was that of the prosecuting witness who had been induced to leave her home, being the home of her mother, in Louisiana, and join the defendant in Beaumont, Tex., concerning promises made to, and sexual intercourse with, her at the place last mentioned. The statement per curiam, attached to the bill, reads, in part:
“The objection was overruled for the' reason that the same promises that were made in Beaumont, Texas * * * were also made * * « in * * ’-Louisiana two or three days previous to those made ’- ’- * in Beaumont, the said promises being false, as was shown by the evidence, for the purpose of deceiving the said [prosecutrix] and to get her away from the home of her mother, * ’- * and to induce her to go to Beaumont, Tex., for immoral sexual intercourse, as shown from the evidence of the said [prosecutrix] and also from letters and telegrams introduced, showing said facts, and, also, that the evidence showed beyond peradventure *661 of any doubt that said [prosecutrix] was a girl of previously chaste character, and only 17 years of age.”
The offense denounced by the statute and charged in the indictment was complete if the defendant, by any false representations, enticed the prosecutrix, she being a woman of previously chaste character, “from her father’s house, or from any other place [in Louisiana] * * * for the purpose of prostitution or for any unlawful sexual intercourse, at a house of ill fame, or at any other place of like character, or elsewhere;” and, as affecting the question of completion and venue, it was immaterial whether, the prosecutrix having been so enticed from her home in this state to a place in another state, further representations were there made to her, followed by her prostitution, or her unlawful sexual intercourse with the defendant; but evidence of those happenings, though not essential, was admissible as supporting the charge that it was for the purpose thus said to have been accomplished that the prosecutrix was enticed from her home in Louisiana. The objection to such evidence was therefore properly overruled.
[2] 2. The motion for new trial was predicated upon the alleged error which has been thus considered, and upon the further grounds that the jury did not give defendant the benefit of the reasonable doubt to which he was entitled, and that their verdict was contrary to law1 and the evidence. There is no complaint that the trial judge failed to instruct the jury that defendant was entitled to the benefit of any reasonable doubt that might be left in their minds, after hearing the evidence, and it was for them to determine whether such doubt existed; neither the trial court nor this court having any possible authority or capacity to determine that question for them. If, however, it be said that, upon the evidence adduced, the jury should have entertained such a doubt, and hence that their verdict should have been set aside by the trial court, and should now be set aside by this court, the answer is that, whilst the trial court might have set it aside upon that ground, this court has no such power; and the same law and jurisprudence apply to what is practically the same question, presented in the complaint, that the verdict was contrary to law and the evidence.
In State v. Peterson, 2 La. Ann. 922, it was said:
“After conviction a motion was made for new trial, on the ground that the verdict of the jury was contrary to law and the evidence; and we are urged to examine the evidence, which was reduced to writing on the trial and has been brought up with the record, in order to determine whether the judge properly overruled the motion. Our jurisdiction, in criminal cases, is limited to questions of law alone. Const, art. 63 (now article 85). We are not permitted to examine the evidence for the purpose of determining whether the court properly exercised its discretion in refusing a new trial, or whether the verdict of the jury is not supported by the evidence, which was admitted without objection. The question is one of fact, in relation to which we are not permitted to inquire or to determine.”
In State v. Ward, 14 La. Ann. 673:
“Before expressing any opinion upon the numerous bills of exception which are presented for our consideration, it is proper that notice should be taken of the extent of our jurisdiction in criminal matters. By constitutional provision it is limited to questions of law; and, in giving effect to this limitation of our appellate jurisdiction, we have, on five different occasions, held that we could take cognizance only of unmixed questions of law, that these questions should be submitted upon bills of exception taken to the ruling of the inferior courts, or upon assignment of errors, unless the defects are patent on the face of the papers, and, finally, that, though certified by the district judge or the clerk, the facts of the case did not fall within our jurisdiction, and we were not justified in giving them our consideration.”
In State v. Sweeney, 37 La. Ann. 2:
“The district judge could have granted a new trial, if the verdict was contrary to the evidence, for he has authority to consider the verdict and review the facts, to test its correctness. Although he cannot comment upon the facts before the jury prior to verdict, still he has the right, after verdict, to decide whether the facts *663 proved justified or not the verdict, and, accordingly, to refuse or grant a new trial. Where he refuses such motion, this court, in the exercise of its appellate jurisdiction, is powerless to grant any relief from the effect .of such ruling, even if the same were erroneous. The constitutional prohibition lies to the exercise of the jurisdiction of this court to find questions of fact which were submitted to and found- by the jury. As this court was never designed to pass upon questions of fact, as a jury is called upon to do, in other words, to pass upon the guilt or innocence of the accused, it cannot, under any circumstances, review the verdict of a jury touching such guilt or innocence.”
In State v. Hauser, 112 La. 334, 36 South. 403, referring to the decision in the case last above quoted, the court said:
“What was said in that case as to the finality of the conclusions reached by the jury upon questions of fact applies also to the conclusions” reached by the jury “in determining its verdict as to the guilt or innocence of the accused. The jury in this state are judges of both the facts and the law. This court is authorized to pass upon questions involving the admissibility or nonadmissibility of evidence before the jury, if they are properly presented to it, but not upon the effect of the evidence when it has once reached the jury. It is authorized to say whether questions of law as submitted to the jury were correct or not, and whether cdrrect questions of law, which the accused had the right to have submitted to the jury, were improperly refused or not; but, when the case once gets to the jury under legal conditions, we are powerless to review the correctness of its conclusions as to the blended questions of law and fact which were submitted to it. We cannot separate the one from the other.”
The court refers to quite a number of eases, cited by the state from among its reported decisions, as supporting the doctrine as thus stated, and other cases have since been decided to the same effect.
In State v. Labry, 124 La. 753, 50 South. 702, it was said:
“The first complaint made in the motion for new trial was that the verdict was contrary to the law and the evidence. That ground of complaint calls for no particular discussion. Marr’s Criminal Jurisprudence, p. S43; State v. Nelson, 3 La. Ann. 497; State v. Crawford, 32 La. Ann. 526; State v. Hauser, 112 La. 313, 36 South. 396; State v. Apfel, 124 La. 649, 50 South. 613.”
In State v. Green, 111 La. 89, 35 South. 396, defendant was convicted of embezzling the money of the “Brooklyn Lodge, Grand United Order of Odd Fellows, a corporation of which he was secretary,” and he moved for a new -trial on the ground that there had been a fatal variance between the allegation and the proof of the “existence of such corporation” ; he having objected to certain of the evidence which had been admitted on that subject. In passing upon the question so presented, this court said, in effect, that if defendant’s bill .had shown that no evidence whatever, “literally none- at all,” had been offered on an essential point, the ruling of the court, in sending the case to the jury, might possibly have furnished matter for the attention of this court.
“But [the opinion goes on] since, in point of fact, the witnesses testified to the corporate character of Brooklyn Lodge, defendant could ' not have meant that no evidence at all, of whatever kind, had been offered to the jury, but he must necessarily have meant that the evidence offered was illegal, or insufficient, or untrue. The latter being the scope of the objection this court cannot review the ruling sending the case to the jury. The jurisdiction of this court, in criminal cases, is restricted to questions of law, and the questions as to the verity or sufficiency of the evidence are purely of fact. * * ¡í With the question raised on the [motion for] a new trial, namely, whether the corporate character of Brooklyn Lodge was in fact proved, this court can have nothing to do. Whether such proof was made or not is a question the jury dealt with. It is a question of fact not within the cognizance of this court.”
There appear in the transcript in the case now under consideration certain letters and telegrams (that is to say, copies) purporting to have been sent by defendant to the prosecuting witness, also a copy of a marriage license, issued by the county clerk of Jefferson county, Tex., authorizing the solemnization of the rites of matrimony between defendant and the prosecuting witness. These documents are not made part of any bill of exception, and, so far as appears, were admitted in evidence without objection, so that defendant had the benefit of anything that, in the estimation of the jury, they may have proved. The clerk of the district court *665 was, however, without authority to copy' them in the transcript, and their being so copied cannot alter the situation, since this court is without jurisdiction to consider them; and the same would be true, if all the evidence offered in the case appeared in the transcript, instead of only part of that offered on behalf of defendant and none of that offered on behalf of the state.
In State v. Ward, 14 La. Ann. 673, supra, it was said:
“It has been remarked by Mr. C. J. Merrick, in the case of State v. Henderson, 13 La. Ann. 489 (and this ruling meets the unqualified approbation of the court), that it is apparent that, inasmuch as the testimony is never taken down by the clerk in criminal cases, the record cannot be certified, as in civil cases, to contain all the evidence; This was known to the framers of the Constitution when they conferred the appeal, and to the Legislature also when it authorized an.appeal in criminal cases, without giving bond. The articles of the Code of Practice, which gives either party the right to require the clerk to take down the testimony in civil cases and * * '* to certify the same to the Supreme Court, qre not applicable to appeals ,in criminal cases.”
It is true that,' under Act 113 of 1896, p. 162, the trial court may order “the facts” to be taken down, in a criminal case, in connection with bills of exception which are reserved, and the clerk is required to attach a “certified copy thereof” to the bill in connection with which it is taken, but the statute mentioned appears to have no application to the situation here presented.
We conclude, therefore, that defendant’s second bill of exception presents no grounds upon which relief can be granted him by this court.
[3] 3. The motion in arrest of judgment was without merit.
The indictment charges, in the language of the statute, or its equivalent, the offense denounced by the statute. The law does not require' that the venue shall be set out in the body of the indictment, but holds it sufficient that it appear in the margin, and it so appears. R. S. 1062, 1064; State v. Wilson, 11 La. Ann. 163; State v. Askins, 33 La. Ann. 1253.
[4] The fact that the federal government has declared it an offense to induce women to travel from one state to another for immoral purposes does not affect the authority of the state of Louisiana to declare it an offense against her laws to entice a chaste woman from her home in Louisiana, by false representations, for such purposes. The laws neither conflict with each other nor cover the same subject, and, in so far as they may be directed against similar evils, are easily reconciled. Bishop’s Or. Law (8th Ed.) § 136.
The motion was therefore properly overruled.
For the reasons thus given, the judgment appealed from is affirmed.
O’NIELL, J., dissents and hands down reasons. See 67 South. 544.